1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

7

8

9

10

11

Brian Whitaker,

             Plaintiff,

     v.

D.S.A. Sports, Inc.,

             Defendant.

Case No.  21-cv-08770-BLF

**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT**

[Re:  ECF No. 17]

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     In this action, Plaintiff Brian Whitaker asserts claims under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act").  *See* ECF No. 1, ¶¶ 27–39 ("Compl.").  Mr. Whitaker seeks injunctive relief, statutory damages, attorneys' fees, and costs of suit.  *Id.* at 7.  Defendant D.S.A. Sports, Inc. ("D.S.A.") has failed to appear in this matter.  At Mr. Whitaker's request, the Clerk of Court has entered default against the Defendant.  *See* ECF No. 14.

     Now before the Court is Mr. Whitaker's motion for default judgment.  ECF No. 17 ("Mot.").  Mr. Whitaker has provided a proof of service showing that he served the motion on D.S.A, *see* ECF No. 19-1, although there is no notice requirement for either the entry of default or Mr. Whitaker's motion.  *See* Fed. R. Civ. P. 55(a), (b)(2).  The Court previously vacated the hearing that was scheduled for August 25, 2022.  *See* ECF No. 24.  For the reasons discussed below, the Court GRANTS IN PART the motion for default judgment.

**I.**    **BACKGROUND**

     According to the Complaint, Mr. Whitaker is a level C-4 quadriplegic who is substantially limited in his ability to walk and uses a wheelchair for mobility.  Compl. ¶ 1.  Defendant D.S.A is the alleged owner of Sports Fever ("Store").  *Id.* ¶ 2.  Plaintiff allegedly went to the Store in

1    January 2021 "with the intention to avail himself of its goods or services motivated in part to

2    determine if the defendants comply with the disability access laws." *Id.* ¶ 8.  Plaintiff allegedly

3    found that Defendant failed to provide wheelchair accessible sales counters and paths of travel in

4    conformance with the ADA Standards.  *Id.* ¶¶ 10, 15.  Specifically, he claims that the Store's

5    point-of-sale machines were on counters that were 44 inches above the floor, and the Store's paths

6    of travel were narrowed in some places to less than 36 inches.  *Id.* ¶¶ 12, 17.  Plaintiff alleges that

7    removal of such accessibility barriers is readily achievable without much difficulty or expense.  *Id.*

8    ¶ 24.  Plaintiff alleges intent to return to the Store once it is made accessible but claims that he is

9    currently deterred from doing so because of his knowledge of the existing accessibility issues.  *Id.*

10   ¶ 25.  He brings claims under the ADA and Unruh Act and seeks injunctive relief, statutory

11   damages, attorneys' fees, and costs.  *Id.* at 7.

## II.    LEGAL STANDARD

13       Default may be entered against a party who fails to plead or otherwise defend an action,

14   who is neither a minor nor an incompetent person, and against whom a judgment for affirmative

15   relief is sought.  Fed. R. Civ. P. 55(a).  After an entry of default, a court may, in its discretion,

16   enter default judgment.  *Id.* R. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

17   In deciding whether to enter default judgment, a court may consider the following factors:  (1) the

18   possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the

19   sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

20   dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7)

21   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

22   *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  In considering these factors, all factual

23   allegations in the plaintiff's complaint are taken as true, except those related to damages.

24   *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted).

25   "When the damages claimed are not readily ascertainable from the pleadings and the record, the

26   court may either conduct an evidentiary hearing or proceed on documentary evidence submitted

27   by the plaintiff."  *Johnson v. Garlic Farm Truck Ctr. LLC*, 2021 WL 2457154, at *2 (N.D. Cal.

28   Jun. 16, 2021) (citation omitted).

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court discusses in turn jurisdiction, service of process, the *Eitel* factors, and Mr. Whitaker's requested relief.

#### A.   Jurisdiction

The Court has subject matter jurisdiction over this lawsuit.  Federal question jurisdiction exists based on Mr. Whitaker's federal ADA claim, 28 U.S.C. § 1331, and the Court can exercise supplemental jurisdiction over his California Unruh Act claim.  *Id.* § 1367.  The Court also has personal jurisdiction over Defendant.  Mr. Whitaker has submitted public records indicating that D.S.A. is a California corporation.  *See* Mot., Ex. 5.  It thus appears that Defendant is subject to this Court's general jurisdiction.  *See Daimler AG v. Baumann*, 571 U.S. 117, 137 (2014).

#### B.   Service of Process

When a plaintiff requests default judgment, the court must assess whether the defendant was properly served with notice of the action.  *See, e.g., Solis v. Cardiografix*, No. 12-cv-01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012).  Federal Rule of Civil Procedure 4 provides that service may be effected in accordance with state law.  *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  Under California law, a corporation or limited liability company can be served by delivering the summons and complaint to one of an enumerated list of individuals, including the designated agent for service of process or the general manager of the entity.  *See* Cal. Civ. P. Code 416.10; *Vasic v. Pat. Health, L.L.C.*, 2013 WL 12076475, at *2 (S.D. Cal. Nov. 26, 2013).  "A sworn proof of service constitutes 'prima facie evidence of valid service which can be overcome only by strong and convincing evidence.'"  *G&G Closed Cir. Events, LLC v. Macias*, 2021 WL 2037955, at *2 (N.D. Cal. May 21, 2021) (quoting *Securities & Exchg. Comm'n v. Internet Solns. for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007)).

Mr. Whitaker has filed a proof of service indicating that the summons and complaint were served on Defendant's agent for service of process, Duane S. Adams, by personal service.  *See* ECF No. 11.  The summons and complaint were left with Adams at his home address on

1    December 11, 2021 at 10:31 a.m.  *See id.*  The Court therefore finds that Defendant was properly

2    served with process.

3        **C.    *Eitel* Factors**

4        The Court finds that the seven *Eitel* factors support entering a default judgment.

5            **i.    Factors 1 and 4–7**

6        On the first *Eitel* factor, the Court finds that Mr. Whitaker would be prejudiced without a

7    default judgment against Defendant.  Unless default judgment is entered, Mr. Whitaker will have

8    no other means of recourse against Defendant.  *See Ridola v. Chao*, 2018 WL 2287668, at *5

9    (N.D. Cal. May 18, 2018) (plaintiff prejudiced without default judgment because she "would have

10   no other means of recourse against Defendants for the damages caused by their conduct").

11       The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation

12   to the seriousness of Defendant's conduct.  *Love v. Griffin*, 2018 WL 4471073, at *5 (N.D. Cal.

13   Aug. 20, 2018).  Mr. Whitaker seeks only statutory damages under the Unruh Act.  While the sum

14   requested is not insignificant, the Court finds it proportional to the conduct alleged.

15       Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of

16   a dispute over any material fact and whether Defendant's failure to respond was the result of

17   excusable neglect.  *See Love*, 2018 WL 4471073, at *5; *Ridola*, 2018 WL 2287668, at *13.

18   Because Mr. Whitaker pleads plausible claims for violations of the ADA and the Unruh Act, and

19   as all liability-related allegations are deemed true, there is nothing before the Court that indicates a

20   possibility of a dispute as to material facts.  Moreover, there is no indication that Defendant's

21   default was due to excusable neglect.  Defendant has not appeared or responded in this action,

22   suggesting that it has chosen not to present a defense in this matter.  Accordingly, these factors

23   weigh in favor of default judgment.

24       On the seventh and final *Eitel* factor, while the Court prefers to decide matters on the

25   merits, Defendant's failure to participate in this litigation makes that impossible.  *See Ridola*, 2018

26   WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2)

27   permits entry of default judgment in situations, such as this, where a defendant refuses to

28   litigate.").  Default judgment, therefore, is Mr. Whitaker's only recourse.  *See United States v.*

United States District Court
Northern District of California

1    *Roof Guard Roofing Co. Inc.*, 2017 WL 6994215, at \*3 (N.D. Cal. Dec. 14, 2017) ("When a

2    properly adversarial search for the truth is rendered futile, default judgment is the appropriate

3    outcome.").

4           **ii.    Factors 2 and 3**

5           Under *Eitel* factors 2 and 3, the Court finds that the Complaint alleges meritorious

6    substantive claims for relief under the ADA and the Unruh Act, and that the facts in the

7    Complaint, taken as true, establish the alleged violations of those statutes.

8           Mr. Whitaker first must establish Article III standing, which requires that he demonstrate

9    he suffered an injury in fact, traceable to Defendant's conduct, and redressable by a favorable

10   court decision.  *Ridola*, 2018 WL 2287668, at \*5 (citing *Hubbard v. Rite Aid Corp.*, 433 F.Supp.

11   2d 1150, 1162 (S.D. Cal. 2006)).  Mr. Whitaker claims that he suffers from a disability, that he

12   personally encountered access barriers at the Store, and that he intends to return to the Store once

13   it is made accessible.  Compl. ¶¶ 1, 21, 25; *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d

14   939, 949 (9th Cir. 2011) ("Demonstrating an intent to return to a noncompliant accommodation is

15   but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.");

16   *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014).  Thus, Mr. Whitaker has

17   alleged that he has standing under the ADA.

18          On the merits, Title III of the ADA provides that "[n]o individual shall be discriminated

19   against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

20   privileges, advantages, or accommodations of any place of public accommodation by any person

21   who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C.

22   § 12182(a).  For purposes of Title III, discrimination includes "a failure to remove architectural

23   barriers ... in existing facilities ... where such removal is readily achievable[.]"  42 U.S.C.

24   § 12182(b)(2)(A)(iv).  To prevail on his Title III discrimination claim, Mr. Whitaker must show

25   that (1) he is disabled within the meaning of the ADA; (2) Defendant is a private entity that owns,

26   leases, or operates a place of public accommodation; and (3) Mr. Whitaker was denied public

27   accommodations by Defendant because of his disability.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d

28   724, 730 (9th Cir. 2007).  To succeed on an ADA claim based on architectural barriers, Mr.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Whitaker "must also prove that: (1) the existing facility presents an architectural barrier prohibited

2    under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL

3    2287668, at *5.

4         Plaintiff has plausibly pled an ADA claim.  First, Plaintiff has alleged that he has a

5    disability within the meaning of the ADA by alleging that he is a level C-4 quadriplegic who is

6    substantially limited in his ability to walk and who uses a wheelchair for mobility.  Compl. ¶ 1.

7    Second, he has alleged that Defendant is a private entity that owns, leases, or operates a place of

8    public accommodation—the Store.  *See* Compl. ¶¶ 2–3;  *see also* 42 U.S.C. § 12181(7)(E) (listing

9    "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or retail

10   establishment" as a place of public accommodation).  Third, Plaintiff alleges that during his visit

11   to the Store, he personally encountered accessibility barriers.  Compl. ¶ 21.  Plaintiff alleges that

12   the sales counters were too high and the paths of travel too narrow.  *Id.* ¶¶ 12, 17.  Mr. Whitaker

13   has also alleged that these barriers are "easily removed without much difficulty or expense" and

14   are examples of "the types of barriers identified by the Department of Justice as presumably

15   readily achievable to remove."  *Id.* ¶ 24; *see also Garlic Farm Truck Ctr. LLC*, 2021 WL

16   2457154, at *6 (finding substantially similar allegations sufficient for default judgment).  Thus,

17   these facts will result in a violation if the alleged conditions are not in conformance with the

18   controlling ADA standards.

19        The Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), found in the

20   ADA's implementing regulations at 28 C.F.R. Part 36, provide "objective contours of the standard

21   that architectural features must not impede disabled individuals' full and equal enjoyment of

22   accommodations."  *Chapman*, 631 F.3d at 945.  "On March 15, 2012, new federal accessibility

23   standards for alterations and new construction went into effect, known as the 2010 ADA Standards

24   for Accessible Design ('2010 Standards')."  *Ridola*, 2018 WL 2287668, at *7.  "The 2010

25   Standards consist of the 2004 ADA Accessibility Guidelines (ADAAG) and the requirements

26   contained in 28 CFR part 36 subpart D."  28 C.F.R. § Pt. 36, App. B.  "Alterations to facilities

27   undertaken after March 15, 2012 must comply with the 2010 Standards."  *Ridola*, 2018 WL

28   2287668, at *7 (citations omitted).  Alterations undertaken prior to that date must comply with the

6

1    1991 ADAAG ("1991 Standards").  *See id.*

2         Mr. Whitaker does not explicitly assert which set of ADA Standards control this matter.

3    The Court will presume that the 2010 Standards apply, although, as noted below, Plaintiff would

4    be entitled to default judgment under either set of standards.  The 2010 Standards require that (1)

5    where the approach to the sales or service counter is a parallel approach, as in this case, "[a]

6    portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm)

7    high maximum above the finish floor shall be provided," and (2) "[e]xcept as provided in 403.5.2

8    and 403.5.3, the clear width of walking surfaces shall be 36 inches (915mm) minimum."  *See*

9    ADAAG §§ 904.4, 904.4.1; *see also id.* §§ 403.5.1.  Mr. Whitaker alleges that the point-of-sale

10   machines at the Store are placed on counters that are 44 inches above the floor, and that the paths

11   of travel at the Store are narrowed to less than 36 inches in some places.  Compl. ¶¶ 12, 17.

12   Therefore, under the 2010 Standards, the Store is clearly in violation of the accessibility

13   requirements.[1]

14        Accordingly, the Court finds that Mr. Whitaker's ADA claim is adequately pled and

15   substantively meritorious in light of Defendant's failure to respond in this action.  Mr. Whitaker

16   has also sufficiently alleged an Unruh Act claim because "[a]ny violation of the ADA necessarily

17   constitutes a violation of the Unruh Act." *M.J. Cable*, 481 F.3d at 731; Cal. Civ. Code § 51(f).

18   Thus, the second and third *Eitel* factors also favor default judgment.

19        **D.    Requested Relief**

20        The Court has found default judgment appropriate, so now it considers Mr. Whitaker's

21   request for injunctive relief, statutory damages, and attorneys' fees and costs.

22             **i.    Injunctive Relief**

23        Mr. Whitaker requests an order directing Defendant to "comply with the ADA in its

24   counters and paths of travel."  ECF No. 17–1 at 10 ("Supporting Memo.").  Aggrieved individuals

25   "may obtain injunctive relief against public accommodations with architectural barriers, including

26

27   _____

[1] Even if the 1991 Standards controlled this matter, the alleged conditions at the Store would still
28   be in violation of the accessibility requirements. *See* Compl. ¶¶ 12, 17; 28 C.F.R. § Pt. 36, App.
     D, at 14, 61.

United States District Court
Northern District of California

'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *M.J. Cable*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1061 (N.D. Cal. 2007). Injunctive relief is thus proper where Mr. Whitaker establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Appx. 669, 670 (9th Cir. 2011)). For the reasons discussed above, Mr. Whitaker has done so here. Accordingly, the Court grants Mr. Whitaker's request for injunctive relief to bring the sales counters and paths of travel in line with the 2010 Standards.

### ii. Statutory Damages

Mr. Whitaker seeks statutory damages of $4,000 for one instance of discrimination he encountered at the Store. Compl. at 7; Supporting Memo. at 9. As pled, the Court finds that Mr. Whitaker is entitled to the statutory damages for his single visit to the Store.

### iii. Attorneys' Fees and Costs

Mr. Whitaker requests $3,960 in attorneys' fees under both the ADA and the Unruh Act for work performed by 3 attorneys and 14 legal assistants. *See* Mot., Ex. 1A. In support of the fees requested, Mr. Whitaker presents detailed billing entries attached to Russell Handy's Declaration, expert analysis of fees for ADA-plaintiff attorneys by fee experts Richard Pearl and John O'Connor, and a survey report pulled from the Real Rate Report. *See id.*, Exs. 1 ("Handy Decl."), 1A, 6–8. The Court finds that this evidence only partially substantiates Mr. Whitaker's request for attorneys' fees and costs.

#### a. Legal Standard

The ADA and the Unruh Act give courts the discretion to award attorneys' fees to prevailing parties. *See M.J. Cable*, 481 F.3d at 730 (citing 42 U.S.C. § 12205); *Vogel*, 992 F. Supp. 2d at 1016 (citing Cal. Civ. Code § 52(a)). Whether calculating attorneys' fees under California or federal law, courts determine fee amounts based on the facts of each case — "the 'lodestar' method." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal quotations and citations omitted). Under the lodestar method, the most useful starting point "is the

United States District Court
Northern District of California

1  number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

2  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking an award of fees should

3  submit evidence supporting the hours worked and rates claimed.  *Id.*

4  "In determining a reasonable hourly rate, the district court should be guided by the rate

5  prevailing in the community for similar work performed by attorneys of comparable skill,

6  experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir.

7  1986).  "Generally, the relevant community is the forum in which the district court sits."  *Barjon v.*

8  *Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997).  The fee applicant bears the burden of producing

9  evidence, other than declarations of interested counsel, that the requested rates are in line with

10  those prevailing in the community for similar services by lawyers of reasonably comparable skill,

11  experience, and reputation.  *See Blum*, 465 U.S. 886, 896 n.11 (1984).  Further, the district court

12  should exclude hours that were not reasonably expended.  *See Hensley*, 461 U.S. at 434.

13              *b.  Rates*

14  The Court finds that the rates Mr. Whitaker seeks exceed those that have been granted in

15  this community for similar work performed by attorneys of comparable skill, experience, and

16  reputation.  The relevant community for this action is the Northern District of California.  Indeed,

17  for attorneys with approximately 20 or more years of experience, courts in this district have

18  generally approved hourly rates ranging from $350 to $475 in disability cases.  *See, e.g.*, *Castillo-*

19  *Antonio v. Lam*, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019) (approving, on motion for

20  default judgment, $350 hourly rate for attorney with over 20 years of experience); *Johnson v.*

21  *Castagnola*, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019) (approving $350 hourly rate for

22  attorney with 20 years of litigation experience, noting that requested rate was unopposed by

23  defendant and in line with rates approved in Northern District); *Johnson v. Baglietto*, 2020 WL

24  3065939, at *11, *12 (N.D. Cal. May 21, 2020) (awarding a $475 hourly rate to Mark Potter in a

25  substantially similar case and finding this rate reasonable based on similar awards granted in the

26  Northern District).  Many of these cases have considered the same evidence that Mr. Whitaker

27  submits here and have found that it does not support the rates he seeks.  *See e.g.*, *Johnson v.*

28  *Huong-Que Restaurant*, 2022 WL 658973, at *5 (N.D. Cal. Mar. 4, 2022) (analyzing declarations

1    of Mr. Handy, fee experts Mr. Pearl and Mr. O'Connor, and the Real Rate Report and finding only

2    lower rates justified).

3         This Court finds the analysis of those cases persuasive and will award hourly rates in line

4    with those cases.  Moreover, this Court finds it prudent to align hourly compensation rates with

5    other, recent cases in this court where the same attorneys have brought substantially similar

6    matters. Mr. Potter will be awarded an hourly rate of $475.  *See Huong-Que*, 2022 WL 658973, at

7    *5; *Johnson v. An Khang Mi Gia,* 2021 WL 5908389, at *9 (N.D. Cal. Dec. 14, 2021).  Mr.

8    Seabock will be awarded an hourly rate of $350.  *See Huong-Que*, 2022 WL 658973, at *5; *Love*

9    *v. Mustafa*, 2021 WL 2905427, at *2 (N.D. Cal. June 11, 2021).  Ms. Clipner will also be awarded

10   an hourly rate of $350.  *See Johnson v. Pennylane Frozen Yogurt*, LLC, 2022 WL 1750382, at *5

11   (N.D. Cal. May 31, 2022); *Johnson v. Rando*, 2022 WL 2981820, at *5 (N.D. Cal. July 28, 2022).

12        Mr. Whitaker has also requested reimbursement of fees for legal assistants at an hourly rate

13   of $100 and for Marcus Handy at an hourly rate of $200 for "his experience as a skilled legal

14   assistant and paralegal."  *See* Handy Decl. ¶ 8.  The Court agrees with other courts in this district

15   that an hourly rate of $100 is reasonable for paralegal and legal assistant fees.  *See Whitaker v.*

16   *Joe's Jeans Inc.*, 2021 WL 2590155, at *5 (N.D. Cal. June 24, 2021).  However, the Court has

17   previously rejected a higher billing rate for Marcus Handy based on similar submissions.  *See An*

18   *Khang Mi Gia*, 2021 WL 5908389, at *9 (finding insufficient justification for a $200 hourly rate).

19   Though the Court recognizes the experience detailed in the declaration, *see* Handy Decl. ¶ 8, it

20   still finds the experience insufficient to award an hourly rate of $200.  Mr. Handy will be awarded

21   an hourly rate of $100.

22              *c.   Hours*

23        Mr. Whitaker requests fees based on 12.9 hours of work.  *See* Mot., Ex. 1A. This Court has

24   recently found as much as 9.1 hours of work to be reasonable for similar cases.  *See e.g., Johnson*

25   *v. Shao*, 2022 WL 767278, at *5 (N.D. Cal. Mar. 14, 2022*)*. Mr. Whitaker's billing summary

26   shows 12.9 hours were expended in this litigation:  Mr. Potter expended 0.8 hours, Mr. Seabock

27   expended 0.1 hours, Ms. Clipner expended 5.9 hours, and paralegals and staff expended 6.1 hours.

28   *See* Mot., Ex. 1A.

United States District Court
Northern District of California

1    The Court has reviewed the itemized statement of Mr. Whitaker's counsel's legal work and

2    finds that the number of hours requested is excessive.  As to Ms. Clipner, the Court finds that the

3    number of hours spent on the default judgment motion was excessive given the boilerplate nature

4    of the submission.  The Court will only grant Ms. Clipner 3.0 of the 5.9 hours requested.  *See*

5    *Pennylane Frozen Yogurt*, LLC, 2022 WL 1750382, at *6 (reducing Ms. Clipner's hours from 4.0

6    to 3.0 hours for a substantially similar motion).  As to the paralegals and staff, it is also

7    unreasonable for this litigation to have passed through fourteen legal assistants, which creates

8    inherent duplication of effort and inefficiencies.  The Court will only allow recovery of 3.0 of the

9    6.1 hours requested for paralegals and staff.  *See id*.  (reducing paralegal and staff hours from 5.0

10   to 3.0 hours for a substantially similar motion).

11                  *d.   Costs*

12   In addition, Mr. Whitaker seeks service costs ($48.00), filing fees ($402.00), and

13   investigation costs ($400.00).  *See* Supporting Memo. at 10; Mot., Ex. 1A.  The ADA provides

14   that the prevailing party may recover "litigation expenses and costs."  *See Johnson v. VN Alliance*

15   *LLC*, 2019 WL 2515749, at *8 (N.D. Cal. June 18, 2019) (awarding costs, filings fees, and

16   investigation costs); 42 U.S.C. § 12205.  With respect to the investigation fees, the Court has

17   reviewed the declaration of investigator Randall Marquis and finds that Mr. Marquis has failed to

18   state an hourly rate or otherwise account for the $400 requested.  *See* ECF No. 20 ("Marquis

19   Decl.");  Mot., Ex. 1A.  Nonetheless, assuming a reasonable rate of $100 per hour, the tasks

20   described could easily have been performed in two hours or less.  *See* Marquis Decl. ¶ 3.  Thus,

21   the Court finds an award of $200 (two hours of work at an hourly rate of $100) to be more

22   reasonable than the $400 requested.  Accordingly, the Court will grant only $650 of the $850

23   requested in costs.

24                  *e.   Summary*

25   The Court's award of fees and costs is summarized below.

| Name | Rate Awarded | Hours Awarded | Fees/Costs Awarded |
|---|---|---|---|
| Mark Potter | $475.00 | 0.8 | $380.00 |
| Chris Seabock | $350.00 | .1 | $35.00 |

11

United States District Court
Northern District of California

| | | | |
|---|---|---|---|
| **Candice Clipner** | $350.00 | 3.0 | $1,050 |
| **Other Staff** | $100.00 | 3.0 | $300.00 |
| | | **Total Fees** | $1,765 |
| | | **Costs** | $650.00 |
| | | **TOTAL Fees & Costs** | **$2,415** |

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

- Mr. Whitaker's motion for default judgment is GRANTED IN PART;

- Mr. Whitaker is AWARDED statutory damages in the amount of $4,000.00;

- Mr. Whitaker is AWARDED $2,415 in attorneys' fees and costs;

- Mr. Whitaker is GRANTED an injunction requiring D.S.A. to bring its sales counters and paths of travel in compliance with the 2010 ADA Standards for Accessible Design; and

- Mr. Whitaker SHALL promptly serve D.S.A. with this Order and file a proof of service with the Court.

Dated:  September 15, 2022

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12